**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RSUI Indemnity Company, a Delaware Corp.,<br><br>                Plaintiff,<br><br>vs.<br><br>Associated Electric & Gas Insurance Services Ltd., a Bermuda Corp.,<br><br>                Defendant. | No. CV 05-2962-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant's Motion For Summary Judgment (Doc. #54). The Court now rules on the motion.

**I.  Background**

Southwest Gas Corporation is a regulated public utility principally engaged in the business of purchasing, transporting, and distributing natural gas to customers in the southwestern United States. Northern Pipeline Construction Company ("NPL") is a wholly-owned unregulated subsidiary of Southwest Gas. NPL provides utility companies with trenching, installation, replacement, and maintenance services on a nationwide basis for energy distribution systems.

NPL purchased a primary insurance policy from American Zurich Insurance Company ("Zurich"), effective from April 1, 2004 to April 1, 2005, with coverage limits of $1 million per occurrence and $2 million in the aggregate. NPL also purchased an excess policy for the same policy period from Plaintiff Royal Specialty Underwriting, Inc. Indemnity Company ("RSUI"). RSUI's policy provided coverage up to $20 million, in

1 excess of the $1 million primary policy.

2 Southwest Gas carried excess insurance for NPL's construction activities as well. NPL, as a subsidiary of Southwest Gas, is included in the definition of insured under the policy issued to Southwest Gas by Defendant Associated Electric & Gas Insurance Services Limited ("AEGIS"). The AEGIS policy had a limit of $35 million in excess coverage.

6 In May of 2004 a fire and explosion in a trailer home in Phoenix seriously injured two small children and their mother. The ignition of natural gas that had leaked from an underground gas service line installed by NPL pursuant to a contract with Southwest Gas caused the explosion. The Zurich, RSUI, and AEGIS policies all undisputedly covered the occurrence.

11 The Rodriguezes (the injured parties) sued both NPL and Southwest Gas for negligence. Southwest Gas tendered defense of the suit to NPL pursuant to the indemnity provisions of their contract. The case settled at mediation for $25 million dollars. The Zurich policy paid the first million dollars of the settlement; the RSUI policy paid the next $20 million; and the AEGIS policy paid the remaining $4 million. RSUI reserved the right to seek contribution from AEGIS.

17 RSUI brought the present action to obtain declaratory relief and contribution from AEGIS. RSUI argues that both the RSUI and the AEGIS policies contained "Other Insurance" clauses that are mutually repugnant. The clauses therefore nullify one another and RSUI and AEGIS should contribute pro rata to the Rodriguez settlement. AEGIS filed the pending motion for summary judgment. AEGIS argues it should not have to contribute pro rata because it is a "true" excess policy and that both AEGIS and Southwest Gas intended for the AEGIS policy coverage to attach only after the exhaustion of the Zurich and RSUI policy limits.

25 **II. Discussion and Conclusion**

26 Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary

- 2 -

judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

RSUI urges the Court to decide as a matter of law that the "Other Insurance" clauses in the two policies are mutually repugnant. But RSUI claims that a finding of mutual repugnance would not decide the case. The Court disagrees. If the Court determines the "Other Insurance" clauses are mutually repugnant, then no issues remain. RSUI and AEGIS would contribute to the settlement pro rata based on the level of their respective coverages. The Court therefore will address the mutual repugnance issue first.

The Court has diversity jurisdiction over this case. It therefore will apply Arizona law. *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Arizona, when two policies "cover the same occurrence and both contain 'other insurance' clauses, the excess insurance provisions are mutually repugnant and . . . [e]ach insurer is then liable for a pro rata share of the settlement or judgment." *Harbor Ins. Co. v. United Servs. Auto. Ass'n*, 559 P.2d 178, 183 (Ariz. 1976). Arizona courts apply this rule because if a court were to give literal effect to each of the "Other Insurance" clauses, then neither policy would cover the occurrence. *Fremont Indem. Co. v. New England Reinsurance Co.*, 815 P.2d 403, 405 (Ariz. 1991).

AEGIS argues that the rule of mutual repugnance applies only when the policies in question provide the same level of coverage. AEGIS cites *AMHS Ins. Co. v. Mut. Ins. Co. of Arizona*, 258 F.3d 1090, 1095 (9th Cir. 2001) for that proposition. The actual issue in *AMHS* was whether an excess carrier could proceed on bad faith claims against another insurer. In Arizona, an insurer owes no duty of good faith to a co-equal insurer. *AMHS*, 258 F.3d at 1095. The *AMHS* court therefore had to examine the level of coverage provided by the policies. *Id*. The 9th Circuit in dicta mentioned Arizona's mutual repugnance rule as stated in *State Farm Mut. Auto. Ins. Co. v. Bogart*, 717 P.2d 449 (Ariz. 1986). *Id*.

While *AMHS* is not directly on point, the Court accepts AEGIS's argument that the

"Other Insurance" provisions in the RSUI and AEGIS policy nullify one another only if both the RSUI and AEGIS policies provide excess coverage. Whether a policy provides excess coverage is a question of law. *AMHS*, 258 F.3d at 1095. Answering that question requires analysis of the policies as a whole. *Id*.

Both parties argue that intent should determine the resolution of the pending summary judgment motion. RSUI argues that issues of fact regarding AEGIS and Southwest Gas's intent preclude granting summary judgment. AEGIS argues that no fact issues exist and that the Court should enforce AEGIS and Southwest Gas's clear intent for the AEGIS policy to attach only after exhaustion of the Zurich and RSUI policies.[1] But intent cannot control in this case because the Plaintiff RSUI was not a party to the AEGIS insurance contract. *State Farm Mut. Auto. Ins. Co. v. Bogart*, 717 P.2d 449, 454-55 (Ariz. 1986) (superseded by statute on other grounds) ("The intention of the parties principle might govern in an action between the parties to the contract. In such an action it would be appropriate to determine whether the parties had reached a meeting of the minds on a particular provision and, if they had, to decide the issue in accordance with their intent. That is not possible in this action because State Farm and Employers were not in privity of contract - the only parties to the contract are State Farm and May."). The Court will look to the policies and how they interact to determine as a matter of law the type of coverage they provide.

The RSUI policy contained an "Other Insurance" clause that read: "This insurance is excess over any other valid and collectible insurance whether primary, excess or contingent. This does not apply to any insurance policy written specifically to apply in excess of this policy." The AEGIS policy in effect at the time of the occurrence also contained a typical "Other Insurance" provision. The AEGIS clause read:

> If other valid and collectible insurance with any other insurer,

---

[1] AEGIS cites cases holding that courts should not interpret insurance policies so as to defeat the insured's reasonable expectations. *See, e.g., Samsel v. Allstate Ins. Co.*, 59 P.3d 281, 284 (Ariz. 2002); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138-39 (Ariz. 1993). But these cases involved actions by the insured against the insurer.

> whether such insurance is issued before, concurrent with, or after inception of this POLICY, is available to the INSURED covering a CLAIM also covered by this POLICY, other than insurance that is issued specifically as insurance in excess of the insurance afforded by this POLICY, this POLICY shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this POLICY subject to the terms of other insurance.

The Court does not agree with AEGIS that the addition of the phrases about not contributing with other insurance and not being subject to the terms of other insurance somehow makes this a "super" excess clause.

The AEGIS policy also contained a Limits of Liability section that provided in pertinent part: "(1) The COMPANY shall only be liable hereunder for ULTIMATE NET LOSS in excess of the UNDERLYING LIMITS as stated in Item 6A or 6B of the Declarations, whichever is applicable."  Items 6(A) and (B) of the Declarations read:

Item 6: UNDERLYING LIMITS

> A. As listed in the attached Underlying Limits Schedule.
>
> B. $1,000,000 Each OCCURRENCE:
>
>> (1) not covered by underlying insurance; and
>>
>> (2) not subject to a self-insured retention listed in the attached Underlying Limits Schedule.

The attached Underlying Limits Schedule listed an underlying limit of $1,000,000 for general liability. It did not list the RSUI policy's $20 million in coverage as underlying insurance.

If, as AEGIS contends, Southwest Gas and AEGIS both knew about the RSUI policy and intended the AEGIS policy to attach only after NPL exhausted the limits of the RSUI policy, then why did AEGIS not list the RSUI policy in the underlying limits schedule? Or specify elsewhere in the policy that the AEGIS policy would not attach until after the RSUI policy or after $20 million of loss? AEGIS could have avoided this lawsuit by more precisely drafting its excess policy. *See AMHS*, 258 F.3d at 1098 n.1 ("[Insurer] also could have written its policy to attach only after the insured incurred a specified financial loss."); *Samsel v. Allstate Ins. Co.*, 59 P.3d 281, 290-91 (Ariz. 2002).

- 5 -

1 Many of the Arizona cases discussing mutual repugnance involved otherwise primary policies that contained "Other Insurance" clauses. *See, e.g., United Servs. Auto. Ass'n v. Empire Fire and Marine Ins. Co.*, 653 P.2d 712, 713-714 (Ariz. Ct. App. 1982). The Zurich policy is the only primary policy in this case. Both the RSUI policy and the AEGIS policy are excess policies.[2] By their terms, both policies attach after the exhaustion of the underlying $1,000,000 Zurich policy. Both contain conflicting "Other Insurance" provisions. Because the Court cannot give effect to both "Other Insurance" clauses without defeating coverage all together, the Court finds them mutually repugnant. The Court therefore grants summary judgment to Plaintiff RSUI.[3] RSUI and AEGIS shall contribute to the settlement pro rata.

///
///
///
///
///
///
///

---

[2] AEGIS wants the Court to find that it is a "super" excess insurer, while RSUI is only an excess insurer; and, therefore, the policies do not provide equal levels of coverage and the doctrine of mutual repugnance does not apply. But AEGIS has not cited and the Court has not found an Arizona case creating a distinction between a so-called "super" excess policy and an excess policy in a mutual repugnance case.

[3] Courts have "the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion." *Kassbaum v. Steppenwolf Prod., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000). But before doing so, a court must determine that "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Ramsey v. Coughlin*, 94 F.3d 71, 73 -74 (2d Cir. 1996). AEGIS has had a full and fair opportunity to brief the issue of mutual repugnance. In fact, AEGIS raised the issue first in its memo in support of summary judgment.

Accordingly,

IT IS ORDERED DENYING Defendant AEGIS's Motion For Summary Judgment (Doc. #54).

IT IS FURTHER ORDERED GRANTING Summary Judgment to Plaintiff RSUI.

DATED this 22nd day of May, 2007.

James A. Teilborg
United States District Judge